**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

A. CHRISTINA BRONNER-STAFFORD,
Appellant,

v.

DEPARTMENT OF DEFENSE,
Agency.

DOCKET NUMBERS
AT-0752-16-0611-P-1
AT-0752-16-0683-P-1

DATE: March 14, 2025

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Armand C. Stafford, Smyrna, Georgia, for the appellant.

Jeffrey Scott Brockmeier, Esquire, Santa Ana, California, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
Cathy A. Harris, Member

**FINAL ORDER**

The appellant has filed petitions for review of the addendum initial decisions, which denied her request for compensatory damages because of the agency's good faith efforts to accommodate her, as set forth in 42 U.S.C. § 1981a(a)(3). For the reasons discussed below, we GRANT the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

petitions for review, JOIN these appeals, and REVERSE the addendum initial decisions. We FIND instead that the good faith defense, as described in 42 U.S.C. § 1981a(a)(3), does not bar the appellant from receiving compensatory damages. We FURTHER FIND that the appellant is entitled to an award of compensatory damages as follows: $379.60 in pecuniary compensatory damages and $21,000 in nonpecuniary compensatory damages.

## BACKGROUND

On May 1, 2017, the administrative judge reversed the appellant's constructive suspension (which lasted from May 30, 2016, to July 22, 2016, the date of her removal), found that the agency committed disability discrimination, and ordered the agency to cancel the suspension and retroactively restore her, effective May 30, 2016. *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0611-I-1, Initial Appeal File (0611 IAF), Tab 54. Also, on this date, the administrative judge reversed the appellant's removal on due process grounds, found that the agency committed disability discrimination, and ordered the agency to retroactively restore her, effective July 22, 2016. *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0683-I-1, Initial Appeal File (0683 IAF), Tab 56. The agency filed petitions for review, and the appellant filed cross petitions for review of these initial decisions. The Board denied the agency's petitions and the appellant's cross petitions and affirmed the initial decision in each matter. *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0611-I-1, Final Order (June 20, 2023); *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0683-I-1, Final Order (June 20, 2023). The Equal Employment Opportunity Commission (EEOC) concurred with the Board's final decisions in these matters. *Remona P. v. Department of Defense*, EEOC Petition No. 2023004216, 2023 WL 9190475 (Dec. 14, 2023).

The appellant filed separate motions for compensatory damages for each agency action. *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0611-P-1, Appeal File (0611 P-1 AF), Tabs 1, 6-10; *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0683-P-1, Appeal File (0683 P-1 AF), Tabs 1, 6-9. In nearly identical addendum initial decisions, the administrative judge denied her motions for compensatory damages because of the agency's good faith efforts to accommodate her, pursuant to 42 U.S.C. § 1981a(a)(3). 0611 P-1 AF, Tab 22, Addendum Initial Decision (AID) at 2-4; 0683 P-1 AF, Tab 21, AID at 2-4. In pertinent part, the administrative judge found that the agency "engaged extensively in the interactive process with the appellant attempting to address her conditions," and he was constrained to rule for the appellant in the underlying appeals because the agency negligently failed to follow its own policy by obtaining a release from her health care provider and failed to submit any countervailing medical evidence at the hearing. 0611 AID at 3-4; 0683 AID at 3-4.

The appellant has filed substantially similar petitions for review of the addendum initial decisions, the agency has filed a single response for both appeals, and the appellant has filed a single reply for both appeals. 0611 P-1 Petition for Review (PFR) File, Tabs 1-2, 4; 0683 P-1 PFR File, Tabs 1-2, 4. In pertinent part, the appellant contends on review that the administrative judge failed to apply *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), to the good faith analysis, and he failed to consider evidence of the agency's "guilt," including when it failed to follow its own policy, failed to engage in the interactive process, and failed to discipline her supervisor. 0683 P-1 PFR File, Tab 1 at 9-13. She also asserts that the administrative judge failed to address the "requested amounts in this case" and her requested damages were reasonable and appropriate. *Id*. at 14-15.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>We join the 0611 and 0683 compensatory damages appeals.</u>

Joinder of two or more appeals filed by the same appellant may be appropriate when it would expedite processing of the appeals and when it would not adversely affect the interests of the parties. 5 C.F.R. § 1201.36(b). Given the interrelatedness of the constructive suspension and removal actions, particularly regarding the appellant's claim of entitlement to compensatory damages, joinder is appropriate here.

<u>We reverse the addendum initial decisions and find that it is not appropriate to apply the good faith defense, as set forth in 42 U.S.C. § 1981a(a)(3), to bar the appellant from receiving an award of compensatory damages.</u>

In the addendum initial decisions, the administrative judge found that the appellant was barred from compensatory damages because of the application of 42 U.S.C. § 1981a(a)(3), which allows an employer to avoid liability for damages for disability discrimination involving a failure to accommodate if it demonstrates that it made a good faith effort to accommodate her disability. 0683 AID at 3-4; 0611 AID at 3-4. The agency's good faith effort claim is akin to an affirmative defense, and the agency bears the ultimate burden of persuasion on the issue. 0683 AID at 3 (citing *Hocker v. Department of Transportation*, 63 M.S.P.R. 497, 507 (1994), *aff'd*, 64 F.3d 676 (Fed. Cir. 1995) (Table)).

We take no issue with the administrative judge's statement that the agency extensively engaged with the appellant during the interactive process, and it failed to follow its own policy by obtaining a release from her health care provider and failed to submit any countervailing evidence at the hearing. 0683 AID at 3-4; 0611 AID at 3-4. However, we are not persuaded that the agency's actions, in total, are sufficient to invoke the good faith defense to bar the appellant's claim for compensatory damages under 42 U.S.C. § 1981a(a)(3). In particular, we are concerned that the appellant's supervisor's questions and criticisms raised in his May 19, 2016 letter were not legitimate. 0683 IAF, Tab 7

at 119-20. A reasonable person reading the appellant's medical documentation in good faith would conclude that both her doctor and the physician's assistant were advising that she (the appellant) was capable of performing the full range of her duties as long as she had a full-time telework accommodation. *Id.* at 123-38. Additionally, the accommodation of full-time telework was reasonable because the appellant had performed successfully with this accommodation for a period of 5 months just prior to her January 2016 absence. For these reasons, we find that the agency has not proven that it engaged in good faith as set forth in 42 U.S.C. § 1981a(a)(3).

Legal framework for evaluating a motion for compensatory damages.

Under the Civil Rights Act of 1991, an employee may recover compensatory damages from a Federal agency that engaged in unlawful and intentional discrimination against her on the basis of her disability.[2] 42 U.S.C. § 1981a(a)(2)-(3); *Edwards v. Department of Transportation*, 117 M.S.P.R. 222, ¶ 9 (2012); *see Danzie v. Department of the Army*, EEOC Appeal No. 01A42575, 2004 WL 1763834 at *2 (July 28, 2004) (stating that compensatory damages are available for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, or Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791, *et seq.*). The Board may order the payment of compensatory damages when there has been a finding that such discrimination occurred. *Edwards*, 117 M.S.P.R. 222, ¶ 9; 5 C.F.R. § 1201.202(c). The Board defers to and adopts the EEOC's criteria for proving

---

[2] Even if we agree with the administrative judge's finding that the agency negligently failed to follow its own policy by obtaining a release from the appellant's health care provider, 0683 AID at 4; 0611 AID at 4, we find that the agency's other actions were intentional.

both the entitlement to and the amount of compensatory damages.[3] *Edwards*, 117 M.S.P.R. 222, ¶ 9; *Sloan v. U.S. Postal Service*, 77 M.S.P.R. 58, 70 (1997).

Section 102(a) of the Civil Rights Act authorizes the award of compensatory damages for pecuniary losses and for nonpecuniary losses, such as but not limited to emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life, injury to character and reputation, and loss of health. *Edwards*, 117 M.S.P.R. 222, ¶ 10; *Heffernan v. Department of Health and Human Services*, 107 M.S.P.R. 97, ¶ 6 (2007); *see* 42 U.S.C. § 1981a(a)-(b). Compensatory damages do not include back pay, interest on back pay, or any other type of equitable relief authorized by the enforcement provisions of Title VII. 42 U.S.C. §§ 1981a(b)(2), 2000e-5(g); *Edwards*, 117 M.S.P.R. 222, ¶ 10. To receive an award of compensatory damages, an appellant must demonstrate that she has been harmed as a result of the agency's discriminatory action and must establish the extent, nature, and severity of the harm, as well as the duration or expected duration of the harm. *Edwards*, 117 M.S.P.R. 222, ¶ 10.

<u>We award the appellant $379.60 in total pecuniary compensatory damages for the constructive suspension and removal actions.</u>

Pecuniary damages are available for out-of-pocket expenses shown to be related to the discriminatory conduct. *Edwards*, 117 M.S.P.R. 222, ¶ 12 (citing *Minardi v. U.S. Postal Service*, EEOC Appeal No. 01981955, 2000 WL 33542026 at *2 (Oct. 3, 2000)). Typically, these damages include reimbursement for medical expenses, job hunting expenses, moving expenses, and other quantitative out-of-pocket expenses. *Edwards*, 117 M.S.P.R. 222, ¶ 12 (internal citations omitted). Claimants generally must document these expenses, typically with receipts, bills, or physicians' statements. *Id*.

---

[3] Contrary to the appellant's assertion on review, 0683 P-1 AF, Tab 6 at 5-6, the Board is not authorized to award compensatory damages based only on the administrative judge's finding that the agency violated her due process rights in the removal appeal.

In the constructive suspension appeal, the appellant sought $1,627.34 in pecuniary damages as follows: medical costs ($1,619.99 for medical appointments, services, prescriptions, and documentation and $7.35 for her Office of Workers' Compensation Programs (OWCP) filing "to offset her lost pay") and loss due to the denial of a reasonable accommodation on March 4, 2016. 0611 P-1 AF, Tab 6 at 14-18. In the removal appeal, the appellant sought to recover $107,007.69 in pecuniary compensatory damages to include $2,367.68 in medical costs,[4] "[p]ay and [b]enefits in [g]eneral,"[5] accrued leave, 2016 Thrift Savings Plan (TSP) distribution and Individual Retirement Arrangement (IRA) withdrawal amounts, payment for any adverse tax consequences of a back pay award, missed step increases, $6,000 in reimbursement for services of a forensic accounting firm, and "loss of promotability." 0683 P-1 AF, Tab 6 at 15-21. The agency stated that pecuniary compensatory damages in the constructive suspension appeal should be limited to $300 (to account for the appellant's July 8, 2016 doctor visit) and $1,000 in the removal appeal.[6] 0683 P-1 AF, Tab 16 at 9-14. We will review the appellant's request for medical costs first and then analyze her remaining requests.

*Medical costs*

The record reflects that the appellant had multiple medical conditions that predated the constructive suspension and removal actions, including severe depression, anxiety, insomnia, bowel problems, diabetes, and post-traumatic stress disorder (PTSD). *E.g.*, 0683 IAF, Tab 7 at 104, 123-38, 170-74, 176-77;

---

[4] This amount appears to include the same $1,619.99 in medical costs that the appellant sought in the constructive suspension compensatory damages appeal. 0683 P-1 AF, Tab 6 at 15.

[5] In this regard, the appellant sought back pay and benefits such as insurance, health insurance, no interest loans and matching contributions, as well as increased tax liability from a back pay award.

[6] It is not clear which expenses the agency considered as recoverable pecuniary compensatory damages related to the removal action.

0683 P-1 AF, Tab 8 at 25. Importantly, we focus on the time period from the constructive suspension to the removal to the order reversing these actions, i.e., from May 30, 2016, to May 1, 2017.[7] *Hollingworth v. Department of Commerce*, 117 M.S.P.R. 327, ¶ 23 (2012). We have reviewed the record in these appeals closely so as not to award duplicative medical costs.

We have considered the appellant's documentation that she submitted in the compensatory damages appeals, including personal statements, spreadsheets of expenses, medical documentation, billing documents, and receipts. 0611 P-1 AF, Tabs 7-10; 0683 P-1 AF, Tabs 7-9. When, as here, the appellant has pre-existing conditions, the agency is only liable for the harm or aggravation caused by the discrimination. *Guajardo-Hartley v. Department of Agriculture*, EEOC Appeal No. 01A02073, 2003 WL 21780270 at *6 (July 24, 2003). We therefore must evaluate whether the appellant has shown that the agency's actions made any of her pre-existing conditions worse.

We have considered the appellant's medical evidence regarding how the agency's actions leading up to the constructive suspension exacerbated her depression, anxiety, and sleep issues.[8] For example, a May 13, 2016 physician assistant's note in the underlying appeal stated that the appellant received a return to work order that week, which caused a relapse in her depression; she had worsening panic attacks, anxiety, and "more frequent nightmares," and she was working through her depression and anxiety in therapy and with medication management. 0683 IAF, Tab 7 at 123-24. We have also considered the

---

[7] The EEOC found that the agency demonstrated it made a good faith effort to accommodate the appellant during the 2014-2015 timeframe, and thus, she was not entitled to compensatory damages for its failure to provide her with a reasonable accommodation. 0683 P-1 AF, Tab 7 at 4-24.

[8] The appellant asserted that she took Nadolol for her nervous system and anxiety and Effexor and Abilify for depression. 0683 P-1 AF, Tab 8 at 12. We take administrative notice that the generic version of Effexor is Venlafaxine, and the generic version of Abilify is Aripiprazole. Effexor XR Uses, Dosage & Side Effects - Drugs.com; Abilify Uses, Dosage, Side Effects, Warnings - Drugs.com.

appellant's non-medical evidence regarding the worsening of some of her conditions during the relevant time frame. 0611 P-1 AF, Tab 6 at 15-17; 0683 P-1 AF, Tab 6 at 16-17.

Except for the May 13, 2016 physician assistant's note, discussed above, the appellant has not submitted any medical evidence to prove a causal connection between the constructive suspension and removal and her worsening conditions. *See Hollingsworth*, 117 M.S.P.R. 327, ¶ 11 ("Without medical evidence indicating that the appellant's medical conditions or the exacerbation of those conditions were caused by the agency's acts, the appellant fails to establish that she incurred the expenses in question as a result of the agency's conduct."). Moreover, she has not explained how some of her other medications related to conditions that were proximately caused by or exacerbated by the agency's discrimination or how her co-pays related to doctor visits seeking to remedy conditions that were proximately caused by or exacerbated by the agency's discrimination. *See, e.g., Keller v. U.S. Postal Service*, EEOC Appeal No. 01A34761, 2004 WL 2148754 at *1 (Sept. 15, 2004) (noting that the appellant failed to demonstrate how each item she identified was proximately caused by the agency's action, for example, the reason she consulted doctors, the purposes of the prescription drugs purchased, and how the agency was responsible for the expenditure of the funds); *Rastogi v. Broadcasting Board of Governors*, EEOC Appeal No. 01A03707, 2003 WL 21997715 at *2 (Aug. 15, 2003) ("[T]he list of appointments and expenses alone do not establish the requisite nexus between the alleged harm and the discrimination."). Finally, the appellant has not cited, and we are not aware of, any authority to award her pecuniary compensatory damages for vitamins, supplements, or her OWCP filing.

Based on our review of the appellant's documentation, we award $379.60 in pecuniary compensatory damages for medical costs during the relevant time frame: $300 for the July 8, 2016 doctor visit; $29.04 for Venlafaxine, $10.00 for Aripiprazole, and $15.38 for Trazodone (for insomnia) on August 27, 2016; and

$15.38 for Trazodone and $9.80 for Venlafaxine on January 12, 2017. 0611 P-1 AF, Tab 8 at 5; 0683 P-1 AF, Tab 8 at 5.

*Other claimed pecuniary compensatory damages*

As noted above, in the removal appeal, the appellant claimed other pecuniary compensatory damages, including "[p]ay and [b]enefits in [g]eneral," accrued leave, 2016 TSP distribution and IRA withdrawal amounts, payment for any adverse tax consequences of a back pay award, missed step increases, reimbursement for services of a forensic accounting firm,[9] and "loss of promotability."[10] 0683 P-1 AF, Tab 6 at 17-21. We have considered these requests, but we conclude that the appellant is not entitled to recover compensatory damages for any of these expenses.

For example, her premature IRA withdrawal in January 2016 occurred months before the constructive suspension and removal actions. 0683 P-1 AF, Tab 8 at 31. Additionally, compensatory damages do not include back pay, interest on back pay, or any other type of equitable relief authorized by the enforcement provisions of Title VII.[11] *Edwards*, 117 M.S.P.R. 222, ¶ 10. Moreover, the record reflects that the appellant had a TSP loan, and on November 28, 2016, the TSP closed her loan by declaring a taxable distribution in

---

[9] The appellant stated that she "engaged the services of McKenzie Forensic Auditors to conduct a forensic audit of the [a]gency's calculation [of] back[]pay, interest, leave, TSP contributions, and impact to [her and her husband's tax bracket for 2023]." 0683 P-1 AF, Tab 6 at 19. She stated that the cost of the audit was $6,000. *Id.*

[10] In her request for pecuniary damages in the constructive suspension appeal, the appellant referenced losses due to a denial of reasonable accommodations on March 6, 2016. 0611 P-1 AF, Tab 6 at 16-17. However, the agency's actions on this date predate the constructive suspension and removal actions and are not relevant to our analysis.

[11] The administrative judge found in the compliance appeals that, with one exception involving the agency's failure to deduct TSP contributions from her back pay, the agency complied with the Board's final orders in the underlying appeals. *See, e.g.*, *Bronner-Stafford v. Department of Defense*, MSPB Docket Nos. AT-0752-16-0611-C-1, Initial Decision (Mar. 27, 2024), AT-0752-16-0683-C-1, Initial Decision (Mar. 27, 2024). Neither party filed a petition for review of these initial decisions.

the amount of $16,458.05. 0683 P-1 AF, Tab 8 at 32. However, she has not persuaded us that the TSP's decision to close the loan was due to the agency's discrimination. Finally, we have considered her assertion that she incurred increased tax liability in the amount of $364 due to the premature IRA distribution, the TSP's decision to close her loan and declare a taxable distribution, and a back pay award. 0683 P-1 AF, Tab 6 at 18, Tab 8 at 36. It is not clear how she arrived at this amount. In any event, we deny her request for compensatory damages in this regard because it is based, at least in part, on the January 2016 premature IRA distribution and the TSP's decision to close her account in November 2016, which we have found were not caused by the agency's discrimination.[12]

We award the appellant $21,000 in total nonpecuniary compensatory damages related to the constructive suspension and removal actions.

Nonpecuniary damages constitute the sums necessary to compensate an injured party for actual harm, even where the harm is intangible. *Edwards*, 117 M.S.P.R. 222, ¶ 21. Nonpecuniary losses are losses that are not subject to precise quantification, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, and loss of health. *Id.* An award of compensatory damages for nonpecuniary losses should reflect the extent to which the agency directly or proximately caused the harm and the extent to which other factors also caused the harm. *Id.* The award should take into

---

[12] Although the appellant did not include a forensic audit in either of the P-1 matters, we found a January 2, 2024 audit by McKenzie Forensic Auditors, Inc. in the compliance appeal. *Bronner-Stafford v. Department of Defense*, MSPB Docket No. AT-0752-16-0683-C-1, Appeal File, Tab 8 at 103-118. The audit itself stated that it was commissioned to conduct a forensic audit of "Back pay and Interest on Back Pay." *Id.* at 104. This report was related to the enforcement action, not the compensatory damages appeal, and it does not address the appellant's alleged increased tax liability. Therefore, it is not relevant to our consideration of the issues in the compensatory damages appeals, and we do not award her compensatory damages for the cost of the audit.

account the severity and duration of the harm, although nonpecuniary damages are limited to a maximum amount of $300,000. 42 U.S.C. § 1981a(b)(3)(D); *Edwards*, 117 M.S.P.R. 222, ¶ 21. The EEOC has stated that the amount of a nonpecuniary damage award should not be "monstrously excessive" standing alone, should not be the product of passion or prejudice, and should be consistent with the amount awarded in similar cases. *Edwards*, 117 M.S.P.R. 222, ¶ 21 (internal citations omitted).

The appellant requested $30,000 in nonpecuniary compensatory damages involving the constructive suspension action and $100,000 in nonpecuniary compensatory damages involving the removal action. 0611 P-1 AF, Tab 6 at 18-22; 0683 P-1 AF, Tab 6 at 21-26. The agency stated that nonpecuniary compensatory damages should be limited to $700 in the constructive suspension appeal and $15,000 in the removal appeal. 0683 P-1 AF, Tab 16 at 9-16. Because the constructive suspension immediately preceded the removal, both actions were reversed on same date, and the appellant's statement and her husband's statement regarding her damages covered both actions, we consider her claims together.

We find that the appellant suffered significant physical, emotional, professional, and financial harm as a result of the agency's discrimination related to the constructive suspension and removal actions. For example, regarding emotional harm, she stated that she experienced "[p]ain and suffering" during her suspension because she was afraid of losing her job, and she felt "anguish, anger, anxiety, and stress" after her removal. 0683 P-1 AF, Tab 8 at 38. She also stated that she suffered "significant blows to [her] psyche, esteem, and [her] ability to be a whole woman to care for [her] husband and family." *Id.* She further stated that she "lost a lot of trust in others and do[es] not make friends as easily," her family was inconvenienced, her husband had "to wait on her hand and foot," she was "still in therapy for periods of low self-esteem," she still gets anxiety when she drives past the office, and she has nightmares. *Id.* The appellant's therapist

stated that the appellant suffered "devastating anxiety on the job," and "experienced a persistent hostile work environment with discrimination," she "is continuing to deal with these issues," and "she will continue to need psychological and medical support for the foreseeable future." *Id.* at 25. We have also considered her husband's statement, which validated the pain and emotional distress that she suffered, and discussed "her loss of self-esteem, focus, mental stability, mental capacity, emotional stability, and lack of intimacy." *Id.* at 40-41.

Regarding physical harm, the appellant asserted that her medications "cause[d] harmful secondary symptoms with stomach, bowel problems, eating and digestion problems," and her depression medication caused, among other things, suicidal ideation. *Id.* at 39. Her husband also stated that her depression "impacted every aspect of [their] lives [including] intimacy, outside activities with friend[s], [and] even activities in the home she once loved." *Id.* at 42. Regarding professional harm, she stated that she "lost access to training, special projects, promotions, and continued working relationship[s] with leadership and management." *Id.* at 38. She also stated that she "went from being the most highly productive GS-12 Termination Contract Officer to one that was blocked from every chance or opportunity for growth and development." *Id.* She further stated that she was "ostracized, black balled, and deemed a threat" at work, and she lost her "association and work group connections." *Id.* She stated that, when she returned to work following reinstatement, "there were many organizational, process[,] and work changes." *Id.* Finally, regarding financial harm, she asserted that she was "the most successful and stable sibling of eight and provide[d] support to [her] mother, sisters[,] and brothers as well as [her] adult children and grandchildren," but when she lost her income, she had to "cut[] back on support for them." *Id.* at 39.

In *Hollingsworth*, 117 M.S.P.R. 327, ¶¶ 15-26, the Board awarded Ms. Hollingworth $15,000 in nonpecuniary compensatory damages for the time

between her April 10, 2009 removal and the May 14, 2010 reinstatement (13 months). In pertinent part, the Board noted that the appellant experienced significant physical, emotional, professional, and financial harm, but she did not demonstrate that any of the effects of that harm were permanent, long-term or catastrophic. *Id.*, ¶ 21. We have also considered the EEOC's decision in *Kandi M. v. Department of the Navy*, EEOC Petition No. 0320180066, 2019 WL 1011514 (Feb. 8, 2019). There, the administrative judge found that the facts were similar to *Hollingworth* but because the duration of suffering was longer (25 months from the constructive suspension to removal to reinstatement), the administrative judge awarded $25,000 in nonpecuniary compensatory damages. *Id.* at *1-2. The EEOC found no basis to disturb the administrative judge's analysis or conclusion. *Id.* at *5.

The severity of harm suffered by the appellant is similar to the harm suffered by Ms. Hollingworth and the complainant in *Kandi M.*, but the duration of harm—11 months from the constructive suspension to the removal to the order reversing the actions—is slightly less than the duration in *Hollingworth* and less than half of the duration in *Kandi M.* Similar to *Hollingsworth*, we are not persuaded that the appellant's harm is permanent or catastrophic. Accordingly, recognizing that nonpecuniary damages are not subject to precise quantification, and considering the cited cases, all of the circumstances above, as well as adjusting for inflation, we find that the appellant is entitled to an award of $21,000 in nonpecuniary damages for the suspension and removal actions.[13]

---

[13] We deny the appellant's request for "[n]on-compensatory" actions, such as requiring the agency to update its reasonable accommodation guidance, investigating certain agency employees, and ensuring that the agency's equal employment opportunity office has independent legal counsel separate from the agency's General Counsel. 0611 P-1 AF, Tab 6 at 21-22; 0683 P-1 AF, Tab 6 at 26-27.

**ORDER**

We ORDER the agency to issue a check to the appellant for compensatory damages in the amount of $21,379.60, representing $379.60 in pecuniary compensatory damages and $21,000.00 in nonpecuniary damages. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

**NOTICE TO THE APPELLANT REGARDING**
**YOUR RIGHT TO REQUEST**
**ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

**NOTICE OF APPEAL RIGHTS**[14]

This is the final decision of the Merit Systems Protection Board in these appeals. 5 C.F.R. § 1201.113(c). You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[14] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2)** **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on

race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[15] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[15] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    _____

Gina K. Grippando

Gina K. Grippando
Clerk of the Board

Washington, D.C.